Whenever you're ready, Mr. Leiberg. Thank you, Your Honor. May it please the Court, Matt Leiberg here for the defendant, Academy Financial Assets, LLC. The revolver here has a fee-shifting provision that's quite favorable to the lender. If the lender incurs costs seeking to enforce the loan agreement, the lender is entitled to. All of its out-of-pocket costs and expenses, including the reasonable fees of outside counsel that are incurred by the lender. Yet, in this case, the lender asked for, and the district court awarded, an automatic 15% attorney's fee, $6 million in a simple collections case. The district court based that decision on a North Carolina statute, and many state and federal courts over the years have had occasion to interpret that statute at 6-21.8. None of those courts, and there are a couple dozen, has ever countenanced such a massive recovery of attorney's fees without evidence of their reasonableness coming before the court. Here, the parties expected in the contract that the lender would have to prove up its out-of-pocket costs and expenses actually incurred. And that's exactly what the lender should be required to do. And the clear language of the statute says, I mean, the pertinent language is, such provision shall be construed to mean 15% of the outstanding balance. That's right, Your Honor. So 15% is 15%. What evidence does there need to be? Sure. So I think the best way to look at Subsection 2 is the way that Judge Hummerkaus analyzed it just recently. And this is a 2020 case that's cited in the briefs. What the judge said is that 1 and 2 are not written in parallel structure. Subsection 1, everyone agrees, I believe all of the parties agree and all of the cases agree, that if you fall within Subsection 1, proof is required. Everybody agrees on that. The question is, what does 2 mean? In Subsection 2, what the judge said is 2 is a function, it serves the function of supplying a percentage cap. Yes, first of all, do you agree that 2 is the applicable statute here to your case? Well, so to rewind, I think that where you start is, attorneys' fees provisions are not enforceable in North Carolina unless there's a statute. The flush language at the very beginning of this statute says, empowers and allows, kind of authorizes attorneys' fees to be shifted in certain contracts. So I think you could stop there. You could just stop and say the parties have written out 70-some words as to how fees should be awarded. The statute allows it in the flush language. The end. Except that doesn't score with the statute at all, because 1 and 2 then says there are two categories. It says, if such note, conditional sale contract, or other evidence of indebtedness. Do you agree that this is a note, conditional sale contract, or other evidence of indebtedness? That's not in dispute. So then I have the statute 1 and 2, and it says, if such note, conditional sales contract, or other evidence of indebtedness provides, I guess, for attorney's fees. Do you agree that this contract provides for attorney's fees? Correct. So then it seems pretty clear to me as a matter of basic statutory construction, this is either a 1 or a 2 case. It can't be neither a 1 or a 2 case. And in fairness, that's what most of the courts who've looked at it have said. Okay. So to go back to Judge Thacker's question, is this a 1 or a 2 case? Right. So it's both. Well, but the statute, you know what I'm going to say next. What I'm going to say next is it says, okay, well, it says, if it provides for attorney's fees in some specified percentage of the outstanding balance, then one rule applies. And then if it doesn't provide for payment of fees in a percentage, another rule applies. That seems to cover the water and says we're either in 1 or we're in 2, but we can't be in both 1 and 2. That's exactly what is, that is not correct. Here's why. 1 and 2 do not have a parallel structure. They do in the first part in terms of if you have a contract that has a particular percentage, then you're within one and only one. The question is what does 2, what is the function of subsection 2? Subsection 2 merely says, it's a gap-filling provision. It says that if you have a contract that doesn't specify a specific percentage, and it tells you how to read that contract. It says such provision. Don't we have a contract that doesn't specify a specific percentage? Correct. Okay, go on then. So this one applies. Absolutely. If you don't agree that the flesh language takes care of it, then yes, we go to 2 because we don't have a percentage in the contract. And what does 2 tell us to do? It says such provision shall be construed to mean 15%. So essentially you take the language that's already in the contract and you write in the percentage is 15. And then you go back to 1. And 1 says, and everybody agrees that 1 requires evidence. Is there a case law that says that both 1 and 2 apply at the same time? Yes. Which is your best case on that? The best case on that is in Reshore. It's a Middle District of North Carolina bankruptcy case cited in the briefs. It's 2020 Westlaw 312-5280. And it's very well reasoned and detailed. They're actually a series of three opinions by Judge Hummerkaus. Just to be clear, this is a decision from a bankruptcy court? Correct. And for many, as Your Honor can see in the briefs, many of these kind of cases arise in federal court in bankruptcy. But I guess I'm just establishing, you know, if the North Carolina Supreme Court had answered this question, they could interpret this statute to be literally anything in the world they want and we'd be bound by it. But anyone other than them, all we're really trying to do is to predict what the North Carolina Supreme Court would say, right? That's exactly right. And, you know, at the end of the day, the court needs to just review the two dozen cases on point and look at, for example, the fact that in the last 25 years, nine cases have gone our way and one contested case has gone the other way. One. In the last 25 years. So that's indicative of something, right? None of those are the North Carolina Supreme Court, because as Your Honor notes, we don't know what the North Carolina Supreme Court would do. Can I ask you a question about, you've said a couple of times, nobody doubts that you need proof under subsection one. I just want to make sure I understand what you mean. If the contract says attorneys fees in the amount of 7 percent of the outstanding balance, everybody agrees you would still have to prove up that that is a reasonable attorney's fee? They do. And it's so odd, because subsection one, I agree with you, subsection one never says you must prove. But both parties have cited in their briefs, and all of the cases appear to agree, that subsection one does require you to prove that up. It's not an automatic. There's nothing automatic under subsection one. So we're, like, well past any kind of a literal interpretation of these, of this provision, right? Because also, like, a specified, a specific percentage means anything under 15 percent or usual hourly rates or anything over 10 percent. Like, right? Like, no one is construing this literally at this point. I think that's the problem, and that's why the courts keep wrestling with it. I mean, take, for example, two of the, when you have cases where there's $3,000 in fees at issue, sometimes the analysis is quick and dirty, and the courts just say, that's fine, close enough, 50 percent. The ones where the courts really pause and spend a lot of time analyzing it are the ones like this case, where the difference is substantial. I mean, in this case, it's not in the record. There's no evidence as to how much the plaintiffs have spent trying to pursue this case. I think, reasonably speaking, there's no way it's anywhere near $6 million. That evidence, the court, the district court didn't require that evidence to be submitted, so we don't know. But let's look at a couple of cases where these kind of big dollar numbers are at issue. Can I ask you, when you're doing that, to specify when we're citing North Carolina decisions and when we're citing federal court decisions? Because, I mean, sort of with all due respect, under the Erie Doctrine, it doesn't really matter what a federal bankruptcy court predicts that a North Carolina statute means in terms of helping us figure out what a North Carolina court would say. I mean, the Supreme Court has literally said that, under Erie, we are forbidden from deferring to trial courts about what state law means. So could you specify when you're talking about actual North Carolina court decisions? Yes, and I'm going to try and address both of those at the same time. First, on the kind of big dollar cases, there are two that I'd like to call the court's attention to. The first has a lengthy analysis. It's Inree Brier Creek. It's, again, a bankruptcy of Eastern District case from 2013. And the difference between a flat fee and prove up your fees is $16 million in that case. Those are the kind of numbers that the court paused and said, there's no way I'm going to award just a blanket $16 million. And the court ends up deciding, what do you do? I mean, the question the court poses, and this is a great case to review for the conundrum we're in, what do you do when the parties go on at length in the contract as to how they think fees should be calculated? Just like here. This isn't you get a reasonable attorney's fee, period. There's 70 words that try and describe what the parties are trying to do. And the question is, does the statute just ignore that? Is the statute so clear that we should just ignore what the parties negotiated? That's the question before the court, and that's the question that was before the court in Inree Brier Creek. Ultimately, the court decided, no way, after examining lots of cases from state and federal court, the court looked back at a North Carolina Court of Appeals case, Barker v. AG, and said, that's the closest analogy. That's a case where the parties in the contract said, we are trying to limit this to costs incurred. And the court said, I'm not going to ignore the contract. We're going to do, in Barker, the North Carolina Court of Appeals says, we're not going to ignore the contract. You have to prove it up. And that's what the judge did in the Brier Creek case. Can I ask you a question? So I understand what you're saying about Barker. In Barker, if I'm remembering, it's the North Carolina case where the court says, look, two is just a fallback provision. If there's no indication of what the parties had in mind, then this is a one case. But you opened your argument by saying, no, no, this is a two case. And that is what confuses me. I thought, under Barker, this would be a one case, not a two case. Right. And the courts have dealt with it in different ways. And I think that whether you call it a one case, because the parties have written language that says, this is how we want it to go, and it goes straight to one, which is what happens in Barker. Or you kind of use two, as the bankruptcy court has looked at, and says, two is a gap filler. And if you don't have a percentage, you kind of pencil in 15, and then you're right back in one. Those are two different ways to approach it. They both end up in the same place, which is that you have to drive through subsection one to figure out how to award fees. But I do want to focus on Judge Hyten's question about what the state has done. Here's what the state has done. In North Carolina, similar to the federal courts, the first court of appeals panel to get to an issue gets to say what the law is at that level. Of course, it doesn't bind the Supreme Court, but it binds the court of appeals. And I think the oldest case that the parties have found is the coastal products case. Way back in, I believe, the early 90s, that case says, it examines it and says, this is a fallback provision, and you don't get an automatic 15%. That binds all future court of appeals panels in North Carolina. Barker comes after that. Barker actually goes up to our Supreme Court and is affirmed on different grounds. So that's kind of a relevant data point. We get to Trull in 1996. That case, the court of appeals went the other way. And unfortunately, I hate to say it, but I love my home court, but this happens from time to time. And that North Carolina court of appeals panel came out a different way. That case went up to our Supreme Court on the dissent. And as mentioned in the briefs, and we can discuss this if Your Honors have questions about it, under North Carolina appellate practice, the scope of what the Supreme Court affirmed in its procuratorial affirmance is just the narrow issue that was covered in the dissent. That's well-established North Carolina procedure law. So when you look at what the North Carolina court of appeals have done, you've got the first case controls under a North Carolina case called Inree Civil Penalty. First case controls, so that's what the law should have been. Various court of appeals opinions have kind of gone a couple different ways over time. But the modern trend, and in fact, every single North Carolina court of appeals panel to consider this issue since 1996 has come out in our favor. But what about the pre-'96 cases? They're a mixed bag. So, for example, you agree that R.C. Associates says that under subsection 2, the legislature has predetermined that 15 percent is a reasonable amount. That is language from the North Carolina court of appeals. Absolutely. And this is what happens, unfortunately, from time to time is the panels. But that's not just troll. It's not just that they've said that once. I mean, the problem is there appear to be decisions in the North Carolina court of appeals saying literally both things. That is exactly correct. More than one. It is not the first time. What we're supposed to do when we're in state court is you say you start with the first one. And it's coastal products. That's in our favor. All the rest of them are wrong. Well, maybe that's what you're supposed to do in North Carolina. But that's not our job. Our job is to predict what the North Carolina Supreme Court would do and of which the decisions of the state intermediate appellate court are evidence of what the state said. But it is not our job to parse who's right under what precedent is controlling of the North Carolina court of appeals. That's true. That's true. And I only offer that because of the troll argument that's being offered by the other side. So what is the best evidence of what our current North Carolina Supreme Court would do? I would say the last 25 years of North Carolina court of appeals opinions is a pretty good guess. Some of those judges are now on our Supreme Court. But the last 25 years except troll. Well, troll is 25. Sorry. Troll. Okay. So every decision sends troll. That's a better way to put it. Every decision. Now, although in fairness, I looked at the two most recent decisions, and tell me if I'm wrong about this, but the two most recent decisions in the North Carolina court of appeals I saw, this question wasn't really presented. These were cases in which the party against whom fees had been awarding, sorry, as I recall, in neither of those cases was the debate in those cases before the North Carolina court of appeals whether you had to go to 15. Those both involved cases where a trial court awarded less than 15, and the party against whom fees had been awarded argued the fees should be even lower than 15. But the party who'd gotten an award of less than 15 was not, as I, do you know what I'm saying? I don't read either, remember either of those decisions where a party that got less than 15 was arguing they should have gotten 15. It was a case where a party had gotten less than 15 was defending the fee award that they had gotten. So it doesn't seem like either of those cases sort of squarely presented this question, right? I think you're right, Your Honor, in terms of what was ultimately the holding of each of those cases, but I would commend you to the Tellerant leasing case from 2009. That's a North Carolina court of appeals opinion that cites coastal products and says evidence is required. You've got to prove up your fees. You're right. Ultimately, the holding didn't turn on that, but it reaffirms that that is the law in North Carolina. And ultimately, the fact that all of the recent North Carolina court of appeals cases and all but one of the contested federal cases in the last 25 years has gone our way. And just to clarify, the reason I say contested is there were actually three federal cases that, on a glance, appeared to support the lender. Two of them, the defendant either defaulted or didn't respond, and the judge just kind of accepted what the lender said. And, in fact, the only federal case that goes in the lender's favor I think has some interesting language. This is the Baker v. Taylor case from 2015. Cites trawl, doesn't cite a single other case from North Carolina state court, decides that subsection 1 requires evidence but subsection 2 does not, and then says even if this interpretation is wrong, it is readily apparent that the fees would exceed 15% anyway. That's the best case, the best recent case that the lender has. But ultimately, there is, I mean, the courts are wrestling with this policy question, right, which is they're trying to read this statute and make sense of it, and as Judge Harris noted, that's not as easy as it might appear to have it be coherent and make sense. And the courts ultimately are saying in cases where there's not a lot at stake, they might kind of touch on it and move on. But in the two main cases where there are millions and millions of dollars at stake, they both came out in our favor. That's the Broward Creek case and then the Ergs 2 v. Licton case from Judge Flanagan in the Eastern District. That one, ironically, is another one where it was a $40 million loan times 15% equals $6 million. And Judge Flanagan says the loan agreement showed that the parties were trying to limit fees. I'm going to respect that. I require evidence. That's exactly the analysis the district court should have done here. I'm sorry, which case was that? That's Ergs, E-R-G-S, Ergs 2 LLC, mellifluous name if any, v. Licton, 2013 Eastern District of North Carolina. I'd like to reserve the rest of my time for rebuttal, please. All right, thank you. Thank you. And we'll hear from Ms. Fussell. Thank you. Good morning. May it please the Court. With respect to the award of the attorney's fees, the district court properly awarded fees in the amount of 15% of the outstanding balance of the loan. Judge Hytens, as you appropriately pointed out, when sitting in diversity jurisdiction as the district court was here, they are required to look at state law and determine what the state's highest court would have done. As this court has said, when applying state law, federal courts have always found the road straighter and going smoother when instead of blazing new paths, they restrict their travels to the pavement. That is exactly what Judge Dever did here. Well, except opposing counsel says we would be blazing new paths. He kept saying that no case since 1996 has gone your way. They're all in his favor. Your Honor, we would disagree that the more recent cases, specifically I believe he was citing the Tellerant case and the Bombardier case, go in his favor. When you look at Tellerant, which is a 2009 North Carolina Court of Appeals case, the lender in that case was actually seeking fees in excess of the 15% cap in the amount of the outstanding balance that was at issue before the district court. The lenders were seeking fees from ancillary litigation where the parties had sought to sell items to reduce the amount that was owed. There was a bankruptcy proceeding, and the lender was seeking fees from those other actions. The court said, well, it's more than 15% of what was owed in this particular case, but when you look at the entire amount that the borrower owed in full, it's actually less than 15% and affirmed the district court's award. Again, that wasn't a case where the issue of a Subsection 2 case was squarely at issue. This is a Subsection 2 case. Can I ask about that? Yes, Your Honor. I mean, there is the coastal production Barker line of cases, and they seem to suggest that Section 2 is reserved for cases where it just says reasonable fees, and we have no idea what the parties had in mind by that, and so it's a fallback provision for that. But if there's some sort of specific understanding between the parties about what that fee award will look like, then you're up in Section 1. Why is that wrong? Coastal production actually supports Judge Devers' findings here. First, the majority of coastal production was applying. It is a Subsection 1 case. The fee provision in that case said, I believe it was a minimum of 10%. Which is not a specified percentage. The North Carolina Court of Appeals held that was enough for it to be a specified percentage of 10%. It's not a specified percentage in the way we normally understand those terms. The North Carolina Court of Appeals said when you have a minimum of 10% or a maximum of something, that that is enough of a specified percentage. I understand. We're sort of talking past each other a little bit here, but I think that once you read Barker, it becomes clear that the reason we are incredibly generously construing what counts as a specified percentage in ways that really do not track normal English usage is because we are limiting Subsection 2 to the category of cases where we just have no idea what the parties have in mind. If they'll give us a hint, we have in mind something more than 10%, then we're in Number 1. Yes, Your Honor. And here the case is a Subsection 2 case, because what the parties agreed to in the revolving credit agreement is that the borrower academy shall pay all out-of-pocket costs and expenses, including the reasonable fees of outside counsel. And under the North Carolina statute and under Subsection 2, where the parties say that they will pay reasonable fees, that is what the North Carolina legislature is defining. If this contract had used the word usual instead of reasonable, then it would be a Subsection 1 case, right? Because then it's just Barker. I think, Your Honor, if the contract had used usual as opposed to reasonable, we may be in Subsection 1 where the parties would be looking at the exact amount. Doesn't that seem sort of, I mean, it's possible the North Carolina Supreme Court would take that formalistic approach to this. But what, again, and this is the last time I'll sort of ask this question, I can't put together the case law in any way that sort of makes sense except for a through line that nobody is reading the statute literally or formally. Nobody is doing that. The Court of Appeals in the cases of Troll and Devereaux Properties and Nucor Corp. v. General Bering at R.C. Associates are reading the statute literally. They're saying where the parties agree to pay reasonable attorney's fees, the lender is entitled to 15% of the attorney's fees without additional proof. But it's clear and undisputed, right? I think everybody is not disputing that once, it's fine. Go on. I have a question. Under your argument, how can parties ever limit attorney's fees in the manner that they see fit? Yes, Your Honor, parties have done so by sort of putting cases into a subsection 1 case where they've said a minimum of 10% and a maximum of 10% based on the standard hourly rate charged and based on the number of hours actually expended. And the courts have said, okay, well, we're in subsection 1. The parties agreed to attorney's fees between 10% and 15% based on the actual amount of time expended. And so parties could do it that way. So, again, this particular provision, if they had added to the end no more than 15%, then this would be a subsection 1 case. Yes, Your Honor. But that's not what they did here. Here they said the lender agrees to pay reasonable fees, and the North Carolina legislature has determined that where the parties say reasonable fees, that that means 15% of the outstanding balance. And the North Carolina courts interpreting this, even the Court of Appeals, troll is not an outlier here. Devereux Properties actually overturned the trial court awarding actual fees incurred and instead said, no, trial court, you should have just awarded 15% of the outstanding balance. Same with Nucor, RC Associates. As it was pointed out earlier, actually said that 15% is a So it reads out the word reasonable, really? The statute defines the term reasonable. When the parties agree to reasonable fees, the North Carolina legislature has said that is 15%. And what's going to be reasonable? It may be unreasonable. 15% may be unreasonable in some cases. Certainly, Mr. Lerberg would argue it's unreasonable here. It certainly wasn't unreasonable to the North Carolina legislature, and that is what they determined as was their priority. I mean, at least one possible rationale for that, I suppose, is that we don't want trial, like fee litigation is annoying and expensive and difficult for trial courts, and maybe the North Carolina legislature just said, whenever possible, we would prefer trial courts not have to review billing sheets and figure out what reasonable time is. If you want a contract for attorney's fees, it's going to be a percentage, but we're not going to make trial courts – I mean, again, whether that's a good decision or a bad decision, I could imagine a rational legislature saying we don't want trial courts wasting their time reviewing billing sheets. Yes, Your Honor. It certainly does create efficiency for both the trial court and the parties. It creates certainty for the trial court and the parties. But how does it do any of that if all you have to do is say no more than 15% and then the trial court has to figure out the reasonable fees? It doesn't do that at all. The parties would be free to contract for that if that's what they wanted. That's just not what they did in this case. Can I ask you a question about the 15% number and why the – it just seems absurd to me. If under subsection 1 they're saying you can never get more than 15%, that is the absolute cap, why would it make sense to say – and if you don't say anything, we're giving you the absolute cap – why would the same number be both an absolute maximum and a minimum? It's the default. If you don't contract around it, that's what you're getting. I'm just struggling to understand why that is not the most absurd structure of all time. Your Honor, unfortunately, I don't have an answer for why the legislature wrote the statute this way. But we do try to avoid absurd outcomes when we – and as does the North Carolina Supreme Court. They do, Your Honor. But the cases here have found that this is not an absurd outcome to award a flat 15%. Why can't it just be a penalty default? We have penalty default rules in contract. We have penalty default rules in tort. We sometimes say, look, if you don't specify, we're going to pick this outcome and that outcome might be a little harsh, so maybe you should specify better. Are you familiar with the concept of a penalty default? I am, Your Honor. While I wouldn't say that this statute is a penalty, the North Carolina courts have actually – No, not a penalty. Not in that sense, but in the sense of sometimes people who create legal rules create rules that they actually suspect that most people might not want if they bargained over the matter. And they do that as a way of incentivizing people to bargain over the matter. It may incentivize bargaining, and in this case the courts have said this provision is actually a safe harbor for the borrower because it requires the lender to provide notice that we – of the amount that's owed and that if the borrower doesn't pay in so many days that the lender is going to seek and may be entitled to 15% of the attorney's fees. So it actually allows the borrower a time to repay the amount actually owed without incurring any attorney's fees. Academy didn't avail itself of that safe harbor here. They said, no, we're going to litigation. In fact, we had an entire litigation process here. To the extent the parties are looking at the most recent cases, there is a June 2022 North Carolina Supreme Court case that while the majority of the case does not discuss the application of subsection 2, it is notable that in the dissent of that case, there was at least one North Carolina Supreme Court justice. What case are you talking about? Yes, Your Honor. It's Reynolds-Douglas v. Terhark. In your brief? No, Your Honor, it was actually out after both sides closed briefing in June 2022. Okay, but still you can – if something comes – we had this in the first case. If something comes to your attention, you file a 28-J letter, you let opponents in counsel have an opportunity to – is this the first time he's hearing of this case too? Yes. Maybe I can't answer that for him if he's seen it before. No, out of your mouth. Out of my mouth, yes, Your Honor. Okay, yes. You need to be fair to opposing counsel, so he'll also have the opportunity to file a 28-J letter in response to this. Yes, Your Honor. I don't understand. Okay, go ahead. In the dissent in that case, the North Carolina Supreme Court, one justice actually discusses the application of subsection 2, and there he says it is a clear 15 percent rule. You look at the outstanding balance and apply a 15 percent. In the Tear Heart case, the trial court had actually awarded fees in excess of 15 percent. It was a $2,000 dispute and it had awarded fees somewhere in the range of $28,000 or $30,000. Without discussion about the reasons for that, the North Carolina Supreme Court affirmed that award, and the dissent actually said if we were appropriately applying this statute, as it's written, as it's clearly written, the party would have only been entitled to 15 percent of the $2,000. Academy would like to focus on the number of words in the attorney's fees provision in the contract when, in fact, you should be looking at what those words say and how North Carolina statute and law applies to those words. Judge Dever correctly held that the agreement provides for reasonable attorney's fees without specifying a specific percentage. That dumps this into Subsection 2, and Colorado Bankers is entitled to 15 percent of the outstanding balance. In this case, it happens to be $6 million. However, Academy had borrowed $40 million that remained outstanding at the time that this lawsuit was filed. Judge Dever appropriately applied the statute in this case. This $40 million is a small fraction of the money that Mr. Lindberg and his companies have taken from Colorado Bankers, which is now insolvent. To avoid paying the contractual attorney's fees, Academy asks you to ignore North Carolina law and instead apply the non-binding decisions of bankruptcy courts out of the federal cases. Thousands of policyholders are waiting on this and numerous other courts to see if they will hold Mr. Lindberg to his promises to repay these insolvent insurance companies back. Fortunately for Colorado Bankers policyholders, Judge Dever did exactly that, finding in favor of Colorado Bankers on summary judgment. Unless the court has other questions, we respectfully ask that his order be affirmed in all respects. Do you have any other questions? I do not. All right, well, thank you for your argument. We'll hear from Mr. Lindberg on rebuttal. Thank you, Your Honor. And I'll explain more in a 28-J letter, but very briefly on the Reynolds-Douglas case. Two things. First, that case actually involved the majority allowing an award of, on a small loan, an award of more than 15 percent based on the evidence submitted. And the dissent said, whoa, whoa, whoa, the evidence submitted might show more than 15 percent, but the statute says you can't give more than 15 percent. Under either one or two. Which is, I think, a reasonable interpretation of the statute. But in any event, if you're going to use that opinion to try and divine the thoughts of the justices, there are two things that kind of jumped out at me. One is the majority said it's important to have litigation be economically feasible, and that's why we're going to allow this kind of very small number, small dollar amount case allow the actual fees incurred be awarded. And the dissent said such a large award would appear to incentivize costly litigation. That was their opposition to an award that exceeded 15 percent. Both of those kind of policy suggestions by the justices to me suggest that they would consider, would be perhaps persuaded by the argument that a windfall of $6 million, such as in this case, would be inappropriate. The Tolerant Leasing case says, and I'll quote it, the law requires evidence and findings of facts supporting the reasonableness of the award. That's what the North Carolina Court of Appeals said about 10 to 15 years ago. The question of the penalty default, Judge Heidens, I think that the high watermark of what the statute could reasonably mean along those lines would be that, two, is that kind of trigger? And if all you say is reasonable fees, if that's all the parties say, then maybe, following your argument, Judge, maybe there is a trigger there that jumps in. But that's not this case. This case, the parties negotiated, they said, out of pocket, and they said incurred. Why would they? I mean, let's agree that if the statute is going to be interpreted that there's an automatic 15 percent, it is necessarily true that the courts will be ignoring the intent of the parties. That is necessarily true under the plaintiff's theory, because that's what the parties put in the contract. Well, but that's also true if the parties say reasonable. I mean, the whole, I guess the statute says shall be, I mean, any time a statute says a private agreement shall be construed creates situations where the court will, in fact, be ignoring what the parties actually meant, right? And in some of the cases where the delta there is 1 percent or something, the courts kind of look the other way. Here, that delta is the majority, if not almost all, of that $6 million award. Lastly, our best evidence on the summary judgment question, I point the court to the MET-PG deal. It's an $800 million deal, October 2019, JA-291. Had that deal gone through, interest would have been cut off, and the award would, the judgment would simply be. And in fairness to, now in fairness to your opposing counsel, you didn't argue about summary judgment in your opening argument. But it's in your briefing, and we'll certainly consider that. It is. If the court has no further questions. All right. Do you all have questions? No. Thank you. Thank you both for your arguments in this really interesting sort of law school type riddle of an issue. We appreciate it. And now I'll ask the clerk to adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Stephanie D. Thacker, Pamela A. Harris, Toby J. Heytens